UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLIE R. CAMERER,

        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

NO. C07-793CRD

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

      Plaintiff Charlie R. Camerer appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA" or "the Act"), 42 U.S.C sections 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA, 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court affirms in part, and reverses and remands in part, the Commissioner's decision for further administrative proceedings.

I. FACTS AND PROCEDURAL HISTORY

      Plaintiff is a fifty-two-year-old male, thirty-eight years old at the alleged disability onset date. Administrative Record ("AR") at 16. He completed high school, three years of college, and has work experience as a laborer, a physical fitness trainer, a warehouseman, a car detailer and a dock worker. AR

ORDER - 1

at 16. Plaintiff filed his application for DIB and SSI benefits on March 11, 2003, alleging disability as of February 1, 1995, due to major depressive disorder versus bipolar disorder, post traumatic stress disorder, status post chemical burns to his feet, status post knee surgery, lower extremity neuropathy, blindness in the left eye, diabetes mellitus, substance abuse in current remission on methadone, and liver disease. AR at 16. His claim was denied initially and upon reconsideration. Plaintiff made a timely request for a *de novo* hearing before an ALJ. On January 9, 2006, ALJ Cheri Filion conducted a hearing. *Id*. at 336-75. The ALJ heard testimony from Plaintiff who was represented by counsel, Peter Scott, Esq. On September 29, 2006, the ALJ issued a decision finding Plaintiff not disabled. *Id*. at 15-22. Plaintiff requested review by the Appeals Counsel, and review was denied, rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On May 23, 2007, Plaintiff initiated this civil action for judicial review of the Commissioner's final decision. Dkt. No. 1. Plaintiff requested oral argument, which was held in this Court on April 29, 2008. Attorney Peter Scott appeared on behalf of Plaintiff and Joanne Dantonio appeared on behalf of Defendant.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

ORDER - 2

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV. EVALUATING DISABILITY

As the claimant, Mr. Camerer bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded.

## V. THE ALJ'S FINDINGS

The ALJ found that Plaintiff's Disability Insurance Benefits insured status expired on March 31, 1999.  AR at 21.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision.  AR at 19, Finding 2.  The ALJ found that prior to the expiration of his DIB insured status on March 31, 1999, Plaintiff did not have a severe impairment or combination of impairments and was not disabled.

At step two, the ALJ found that after his SSI application date of March 11, 2003, Plaintiff had the following severe impairments: major depressive disorder versus bipolar disorder, post traumatic stress disorder, status post chemical burns to feet, status post knee surgery, lower extremity neuropathy, blindness in the left eye, diabetes mellitus, and substance abuse in current remission on methadone.  *Id.* at Finding 3.  At step three, the ALJ found Plaintiff's impairments did not meet or equal the requirements of any listed impairment.  *Id.* at 20, Finding 4.  The ALJ next determined that Plaintiff retained a RFC for a significant range of light work, but that he could not do jobs requiring depth perception.  Plaintiff could do simple, repetitive tasks and some detailed work.  He could not do jobs requiring significant interaction with the public  *Id*.  At step four, the ALJ found that Plaintiff could not perform any past relevant work.

ORDER - 4

*Id.* at 22, Finding 7.  At step five, the ALJ determined that Plaintiff could perform a significant number of other jobs in the national economy.  The ALJ therefore concluded Plaintiff was not disabled as defined in the SSA.  *Id.* at 24, Finding 10.

## VI. ISSUES ON APPEAL

Plaintiff brings the following principal issues on appeal:

1. Did the ALJ err in evaluating the opinions of examining state-agency psychologist, Dr. Mashburn?
2. Did the ALJ err in evaluating the opinions of Plaintiff's mental health counselor?
3. Was the ALJ required to consult a vocational expert ("VE") to identify jobs Plaintiff could perform?
4. Did the ALJ err in assessing Plaintiff's credibility?

Dkt. No. 10 at 2-6.

## VII. DISCUSSION

Plaintiff alleges disability since 1995.  There are two periods of disability at issue in this case because Plaintiff's insured status for purposes of DIB expired on March 31, 1999.  In denying disability insurance benefits, the ALJ found:

> Prior to the expiration of his insured status on March 31, 1999, the claimant did not have a severe impairment or combination of impairments.  He was incarcerated most of the time between his alleged disability onset date (February 1, 1995) and when his insured status expired on March 31, 1999.  Generally, prisoners are not eligible to receive disability payments, 20 CFR 404.468 and 416. 1325.  Additionally, the claimant said that much of this time he was using drugs.  There is very little medical evidence of record dated from this time period.  There are several pages of handwritten notes of the claimant's tooth pain in 1997 and a foot problem (Exhibit 2F, pages 2-4).  There is no indication that these problems lasted for 12 continuous months or more or that they were severe enough to limit basic work activities.

AR at 17.

Plaintiff does not specifically dispute any of the above findings.  The focus of Plaintiff's appeal is with respect to the ALJ's finding him not disabled from the date of his SSI application, March 11, 2003.  Therefore, this Court affirms the ALJ's decision with respect to the denial of disability insurance benefits under Title II.  While Plaintiff states he is disabled due to a combination of physical and mental

ORDER - 5

limitations, he alleges his main limitations are the result of his severe depression. Dkt. 12 at 2.

*A. The ALJ erred in evaluating the opinions of Dr. Mashburn.*

Plaintiff asserts that the ALJ erroneously rejected the opinion of examining psychologist, David J. Mashburn, Ph.D., a state agency consulting psychologist. Dkt. 10 at 3-4; Dkt. 13 at 4. Following the hearing, the ALJ ordered a consultative examination, and in May 2006, at the request of the ALJ, Dr. Mashburn examined Plaintiff and performed psychological testing. AR at 311-317. Based on a review of Plaintiff's records, an interview, examination, and testing, Dr. Mashburn completed the agency questionnaire with a range of five categories of severity (none, slight, moderate, marked, and extreme), and found "marked" restrictions in six out of ten categories. With respect to Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers, to respond appropriately to work pressures and to changes in a routine work setting, and the ability to make judgments on simple work-related decisions, Dr. Mashburn found Plaintiff's limitations were "marked," and that Plaintiff had "moderate" restrictions in the ability to understand, remember, and carry out detailed instructions. *Id.* Dr. Mashburn concluded Plaintiff had a Global Assessment Functioning ("GAF") score of 51.

To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.1995); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (internal citations omitted). The rejection of an opinion of a treating physician based in part on the testimony of a nontreating, nonexamining medical advisor, may be upheld. *Morgan v. Commissioner* 169 F.3d 595, 602 (9th Cir. 1999), citing *Magallanes*, 881 F.2d at 751-55; *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

Dr. Mashburn examined Plaintiff at the request of the ALJ. Plaintiff suggests that because Dr. Mashburn was Defendant's own expert witness and examiner, and because his opinion was solicited at

ORDER - 6

the conclusion of the evidentiary process, the greatest weight should be given to his opinions. Defendant argues that the ALJ properly rejected Dr. Mashburn's opinion that Plaintiff had marked mental limitations, as supported by evidence in the record of activities demonstrating Plaintiff's abilities beyond the doctor's opinion.

With respect to Dr. Mashburn's opinion, the ALJ found:

> The claimant's daily activities are inconsistent with the severity of limitation specified by Dr. Mashburn. Dr. Mashburn reported that claimant was able to cook, clean, and grocery shop. Such activities require getting out in the community, some interaction with people, and making simple decisions. Although claimant said he did not like being out in public, a friend was taking him to a Mariners baseball game on the night of the interview. The claimant also had attended weekly counseling at Seattle Mental Health. Although claimant does have some limitations from mental health impairments, his actual functioning reveals that he is not as limited as specified by Dr. Mashburn.

AR at 19.

Because Dr. Mashburn is an examining physician, to reject his opinions the ALJ is required to give "specific and legitimate" reasons that are supported by substantial evidence, in such instances where the doctor is contradicted. *Lester*, 81 F.3d at 830-31; *Magallanes*, 881 F.2d at 751-55. In this case the ALJ gave more weight to the opinion of consulting psychologist Mark Koenen, M.D., who interviewed Plaintiff in September 2003, and concluded that his limitations were more moderate than the marked limitations found by Dr. Mashburn. Dr. Koenen concluded Plaintiff had a moderately low GAF of 55, slightly higher than the GAF of 51 opined by Dr. Mashburn. AR 215-20. As set forth above, the ALJ based the rejection of Dr. Mashburn's findings on activities of Plaintiff's daily living as reported to Dr. Mashburn, which the ALJ found were inconsistent: that Plaintiff was able to cook, clean, and grocery shop--activities which the ALJ found required being out in the community and interacting with people. AR at 19. However, there is not substantial evidence in the record that supports this reasoning; even if Plaintiff were able to grocery shop, this one activity does not demonstrate he regularly interacts with people, nor do cooking and cleaning in his home. The ALJ also found it contradictory that although Plaintiff reported that he did not like to be in public, that his friend was taking him to a Mariner's game the night of the interview; however, the ALJ reported this comment out of context; the complete observation from Dr. Mashburn is that "...a friend is going to take him to the Mariners game tonight for

ORDER - 7

his birthday and he is not looking forward to it.  He believes that once he is there he will be all right, but he fears being in public situations and in fact spends most of his day at home because of this.  He reports he does experience chest pain occasionally when in public and believes that this is panic." AR at 316.  The ALJ's final reason for discounting the opinion of Dr. Mashburn is that Plaintiff also attends weekly counseling at Seattle Mental Health, citing this as another reason Plaintiff is better socially adjusted than Dr. Mashburn opined.  AR at 19.  However, even as noted by the ALJ, Plaintiff attends the counseling sessions at Seattle Mental Health as advised by Dr. Koenen: "Mr. Camerer's ability to deal with the usual stress encountered in competitive work is likely somewhat impaired by his symptoms of post traumatic stress disorder.  A regimen of psychotherapy could improve his coping ability and enable him to better handle stress." AR at 220.  Regardless, the ALJ's reasoning that Plaintiff's better social functioning is evidenced by the fact that he attends counseling for drug and alcohol dependance and for stress and social anxiety, is circular.  The reasons given by the ALJ for discounting Dr. Mashburn's opinions are not specific and legitimate, nor are they supported by substantial evidence in the record before this Court.  Moreover, the opinions of Dr. Mashburn are supported by Plaintiff's ongoing treatment counselor at Seattle Mental Health, Karen Simms, M.A., as discussed further below.

     Dr. Mashburn's opinions are additionally supported by the state examining psychologist at Seattle Mental Health who examined Plaintiff in March 2004, and found him considerably limited and diagnosed him with major depressive disorder, recurrent, severe with psychotic features, post traumatic stress disorder, and panic disorder with agoraphobia.  AR at 267.  The ALJ also gave limited weight to this opinion, stating that the findings were "mixed" and that the evaluation was a "one time evaluation using a check box form" and stated that "the psychologist didn't adequately explain how his findings lead to such significant limits given the mixed results of his testing." AR at 19.  However, this Court finds the observations and conclusions of the report are not internally inconsistent, contrary to what the ALJ found, and notes that the ALJ's second reason for discounting the opinion, because it was a check box form, is undermined by the fact that the check box form is accompanied by an extensive narrative. AR at 267.  Further, the opinions of Dr. Eisenhaur, whom the ALJ found credible, also consisted predominately of check box questions which were also based on a one-time examination of Plaintiff.  AR at 237-253.

ORDER - 8

*B. The ALJ erred in evaluating the opinions of Plaintiff's counsel.*

Plaintiff asserts that the ALJ improperly rejected the opinions of his counselor at Seattle Mental Health, Ms. Simms. Defendant argues that Ms. Simms is not qualified as a medical source because she is a counselor with a Master's degree, and therefore her opinions should be treated as lay witness opinions. An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Inconsistency with medical evidence is one such reason. *Id.* Here, the ALJ analyzed Ms. Simms' opinions along with the other medical and psychological examiners' opinions. AR 18-19. This is permissible under SSR 06-03p.[2] The ALJ addressed the lay witness opinions of Plaintiff's two friends separately, following the medical and psychological evidence. AR at 20. The record reflects that Ms. Simms counseled Plaintiff for depression, post traumatic stress disorder, and panic disorder at Seattle Mental Health for over one year, following his former clinician at the same facility. AR 254-81. She was not giving her opinion merely as an advocate, and was not a friend or family member; her opinions reflected her clinical experience and conclusions in counseling Plaintiff.

The ALJ gave reduced weight to Ms. Simms' opinions, stating: "[t]hese statements were prepared shortly before the January 9, 2006 hearing, and for the purpose of advocating the receipt of benefits. They were not prepared in the context of therapy or treatment. In addition, the limits are not supported by the medical evidence as a whole. Thus, the report is given little weight." AR at 19.

With respect to grounds for rejecting medical reports, the court in *Reddick v. Chater*, 157 F.3d 715, 724 (1998), found that, "the mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report. Evidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could, however, form a legitimate basis for evaluating

---

[2] SSR 06-03p provides in relevant part, "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

ORDER - 9

the reliability of the report." *Reddick*, 157 F.3d at 726. Accordingly, the *Reddick* Court concluded:

> We clarify here that, in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it. In the present case, the fact that Dr. Jacobson drafted response letters should have no adverse affect on his credibility or the weight of his determination. Dr. Jacobson's letters were consistent with his findings spanning several years. His opinion was drawn from three and a half years of treatment and is supported by medical reports in the record. His clinical findings were not contradicted by any of the examining physicians.

*Id.*

Therefore, an ALJ may not reject a medical opinion solely on the basis for which it was obtained, but may consider it as a factor where a report is also in question for consistency, internally or in comparison to the rest of the record. In the present case, the ALJ did not provide any other specific reason for rejecting Ms. Simms' report, other than the broad statement that he did not find the limits she assigned "supported by the medical evidence as a whole." AR at 19. Thus, the ALJ did not provide either "specific and legitimate" reasons, under the physician standard, or even "germane" reasons, under the lay witness standard, for discrediting Ms. Simms' opinions. Accordingly, the ALJ's rejection of the report was not based on substantial evidence in the record and is therefore in error.

   *C. Use of a Vocational Expert*

At step five, the ALJ used the Medical-Vocational Rules ("guidelines" or "grids") to determine that Plaintiff could perform a significant number of light work jobs in the national economy. AR at 22. Plaintiff challenges the ALJ's use of the guidelines without consulting a VE, arguing that because the ALJ found him to have nonexertional limitations, a VE consultation was required. Dkt. 14 at 4-11. Specifically, Plaintiff asserts that the ALJ's finding of "moderate difficulties in social functioning," and "moderate difficulties in maintaining concentration persistence or pace" are significant nonexertional limitations requiring the expert testimony of a VE.

"There are two ways for the Commissioner to meet his Step Five burden: (1) the testimony of a VE; or (2) by reference to the Medical-Vocational Guidelines... Where the claimant has significant non-exertional impairments, however, the ALJ cannot rely on the Guidelines." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (citations omitted). An ALJ's use of the grids is permissible where the

ORDER - 10

grids "completely and accurately represent a claimant's limitations, such that a claimant is able to perform the full range of jobs in a given category." *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 404.1560(b)(3); Part 404, Subpart P, App. 2, Rule 200(e). "However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Tackett*, 180 F.3d at 1102. Plaintiff reasons that since the ALJ determined he had "moderate difficulties in social functioning," and "moderate difficulties in maintaining concentration persistence or pace," that these impairments are significant non-extertional limitations requiring VE consultation. This is not necessarily true. "[A] vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (finding substantial evidence supported the ALJ's finding of moderate depression, and determination that it was not a severe nonexertional limitation, and therefore holding it did not prohibit reliance on the grids without assistance of a VE). Thus, although a limitation is deemed moderate, it is not necessarily a significant or a sufficiently severe nonexertional limitation that is not contemplated by the grid. In *Hoopai*, 499 F.3d at 1076-77, the court upheld the ALJ's conclusion as supported by substantial evidence in the record that Plaintiff's "moderate depression" was not a sufficiently severe nonexertional limitation requiring VE testimony. In *Hoopai*, as in the present case, the ALJ found the moderate impairment was not so severe as to be outside the grids.

However, as discussed above, the ALJ's reasons for discounting the opinions that concluded Plaintiff's nonexertional impairments were more severe than the ALJ found, were not based on substantial evidence. Had the ALJ properly evaluated those opinions, vocational expert testimony would have been required. Therefore, on remand the ALJ should properly evaluate and weigh the opinions of Dr. Mashburn and Ms. Simms and elicit the testimony of a vocational expert.

*D. The ALJ did not err in assessing Plaintiff's credibility.*

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001)*; Thomas*, 278 F.3d at 958-59. In finding a claimant's testimony unreliable, an ALJ must render a credibility determination with

ORDER - 11

sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ analyzed Plaintiff's credibility as follows:

> The claimant's complaints of his functional limitations after March 11, 2003, were not credible. His daily activities belie his complaints of limited ability. Although he claimed that many times he could not even get out of bed due to his impairments, he has a history of lifting weights, working out, doing housecleaning, and taking the bus. While claiming that he doesn't do well around people, he went out daily to receive methadone. At the hearing he testified that he likes to walk the Burke Gilman trail a lot and [sic] activity that would put in him contact with others. He also goes to AA and NA meetings four to five times per week and he has friends, indicating an ability to adequately interact in social settings. His credibility is also significantly eroded by his extensive history of drug use that has clearly impacted his participation in the work world in the past and his extensive criminal history that would impact the number of employers willing to hire him, a fact that cannot be considered in establishing medical disability. Additionally, some of his convictions were for felony forgery, theft, and shoplifting, crimes that are not merely related to his drug use, although, no doubt, fueled by it. The specific nature of his crimes reveals an individual who purposely has engaged in fraudulent activities that show a person capable of being dishonest when it suits him. As much of his alleged limits rely on the veracity of his reports, both to me and his doctors, I specifically discount his statements that appear to exceed the objective findings that would support these limits.

AR at 19-20.

In January 2004 Plaintiff filled out an agency questionnaire in which he states that he takes walks, works out, and has coffee and talks with friends (AR at 113), and at the hearing Plaintiff testified that he works out once in awhile yet also testified that he had not worked out in over a year, and stated that he keeps busy, and said that "[s]ometimes I get energetic and I do that kind of thing. It just depends on how I feel. Most of my day is spent either sitting in front of the tube or whatever, I just don't have much get

ORDER - 12

up and go." AR at 359. Plaintiff's testimony is somewhat inconsistent internally and appears inconsistent with his prior questionnaire statements. Plaintiff argues that the testimony is not inconsistent but shows his condition has worsened over time. Dkt. 13 at 3.

The ALJ's analysis contains sufficiently specific findings, supported by substantial evidence, as reasons for not fully crediting Plaintiff's subjective complaints. Accordingly, the Court finds that the ALJ properly determined that Plaintiff's subjective allegations were less than fully credible. *See Green v. Heckler*, 803 F.2d 528, 532 (9th Cir. 1986) (stating that ALJ's credibility determinations are entitled to "great deference"); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (stating that ALJ's role is to judge credibility of claimant).

## VIII. CONCLUSION

In sum, this Court affirms the ALJ's decision with respect to the denial of disability insurance benefits under Title II and reverses and remands with respect to the Social Security Income disability benefits under Title XVI.

For the reasons set forth above, the Commissioner's decision is AFFIRMED IN PART, and REVERSED IN PART and this case is REMANDED for further administrative proceedings pursuant to 42 U.S.C. § 405(g) (a sentence four remand).

DATED this 8th day of May, 2008.

Carolyn R. Dimmick
United States District Judge

ORDER - 13